UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANCINE FRIEDMAN GRIESING,           )
individually and on behalf of a class of    )
similarly-situated female employees,        )
                                            )
                Plaintiff,                   )
                                            )
        v.                                   )          Civ. No. 12-cv-8734 (WHP)
                                            )
GREENBERG TRAURIG, LLP,              )
                                            )
                                            )
                Defendant.                   )

PLAINTIFF FRANCINE FRIEDMAN GRIESING'S MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANT'S MOTION TO STAY

## TABLE OF CONTENTS

<b><u>PAGE</u></b>

I.   INTRODUCTION…………………………………………………..…….1

II.  FACTUAL AND PROCEDURAL BACKGROUND...........................................2

III. ARGUMENT

    A. DEFENDANT CAN NOT MEET THE HEAVY BURDEN NECESSARY
       FOR A STAY.......................................................................................................4

       1. Staying this action would unfairly prejudice Ms.
          Griesing and the absent class members……………………..……..…..5

       2. Staying this action would decrease judicial efficiency
          and lead to inconsistent outcomes………………………………......…6

       3. Staying this action is contrary to the public interest…………………8

       4. Denying a stay will not cause irreparable harm to the Defendant.......9

             a. GT can obtain relief from this Court in the resolution of
               Plaintiff's Declaratory Judgment count…………………….…..9

             b. GT can obtain relief from this Court pursuant to
               FAA Section 3……………………………………………………9

             c. GT could obtain relief from this Court pursuant
               to FAA Section 4…………………………………………………...11

    B. PLAINTIFF WAS UNAMBIGUOUSLY THE FIRST TO FILE, SO THIS COURT
       SHOULD ADJUDICATE THE ENTIRE CASE………………………………….…..12

IV.  CONCLUSION………………………………………………….....15

# TABLE OF AUTHORITIES

**CASES**                                                                                                              **PAGE**

*Adams v. Jacobs*
950 F.2d 89 (2d Cir. 1991)…………………………………………………………………13

*AEP Energy Servs. Gas Holding Co. v. Bank of Am. N.A.*
626 F.3d 699 (2d Cir. 2010)………………………………………………………………12-13

*Alpert v. Alphapagraphics Franchising, Inc*
731 F. Supp. 685 (D.N.J. 1990)……………………………………………………......13, 14

*Anaconda v. American Sugar Refining Co.*
322 U.S. 42 (1944)…………………………………………………………………………10

*Bank of Credit & Commerce Int'l Overseas Ltd. v. State Bank of Pakistan*
273 F.3d 241 (2d Cir. 2001)…………………………………………………………………8

*Chen-Oster v. Goldman, Sachs & Company*
785 F. Supp. 2d 394 (S.D.N.Y. 2011)……………………………………………….………6

*Chen-Oster v. Goldman, Sachs & Company*
No. 10 Civ. 6950, 2011 U.S. Dist. LEXIS 73200 (S.D.N.Y July 7, 2011)………………….....6

*Citicorp Leasing, Inc. v. United American Funding, Inc.*
No. 03-1586, 2004 U.S. Dist. LEXIS 739 (S.D.N.Y. Jan. 21, 2004)…………………………13

*Corcoran Law Group, L.L.C. v. Posner*
No. 09-1861, 2009 U.S. Dist. LEXIS 52587 (S.D.N.Y. June 5, 2009)…………………….....5

*Duferco International Steel Trading v. T. Kaveness Shipping A/S*
333 F.3d 383 (2d Cir. 2003)…………………………………………………………………6

*First City National Bank & Trust Co. v. Simmons*
878 F.2d 76 (2d Cir. 1989)…………………………………………………………………13

*Ford Motor Co. v. EEOC*
458 U.S. 219 (1982)…………………………………………………………………………8

*Fox v. Vice*
131 S. Ct. 2205 (2011)………………………………………………………………………9

*Greenberg Traurig, P.A. v. Griesing*
No. 12-cv-6718 (E.D.Pa. Dec. 3, 2012)……………………………………...…………3

*Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*
808 F. Supp. 2d 552 (S.D.N.Y. 2001)……………………………………………………4

*In re All Funds in Accounts in the Names Registry Publishing, Inc., et al.*
58 F.3d 855 (2d Cir. 1995)…………………………………………………………...5

*In re Am. Express Merchants Litigation*
667 F.3d 204 (2d Cir. 2012)………………………………………………………6

*In re Am. Express Merchants Litigation*
133 S. Ct. 594 (2012)…………………………………………………...………6

*In re Charter Oak Associates*
361 F.3d 760 (2d Cir. 2004)……………………………………………………...…6

*In re Frigitemp Corp.*
8 B.R. 284 (S.D.N.Y. 1981)……………………………………………………...11

*In re Platinum & Palladium Commodities Litigation*
No. 10-3617, 2010 U.S. Dist. LEXIS 145183 (S.D.N.Y. Nov. 30, 2010)………………………...4

*Indian Harbor Ins. Co. v. Global Transportation Systems*
197 F. Supp. 2d 1 (S.D.N.Y. 2002)……………………………………………………...11

*J.P. Morgan Sec. v. Louisiana Citizens Proposition Insurance Corporation*
712 F. Supp. 2d 70 (S.D.N.Y. 2010)……………………………………………………11

*Landis v. North American Company*
299 U.S. 248 (1936)……………………………………………………………4

*Manta Ray Offshore Gathering Co., L.L.C. v. Shell Offshore, Inc.*
No. 04-2553, 2006 U.S. Dist. LEXIS 54941 (E.D. La. Aug. 7, 2006)………………………...11

*Metropolitan World Tanker Corp. v. P.N. Pertambangan Minjakdan Gas Bumi Nasional*
427 F. Supp. 2 (S.D.N.Y. 1975)……………………………………………………10

*R. Maganial & Co. v. M.G. Chem. Co.*
942 F.2d 164 (2d Cir. 1991)……………………………………………………8

*Raytheon Co. v. National Union Fire Insurance Company*
306 F. Supp. 2d 346 (S.D.N.Y. 2004)……………………………………………………...11

*Robbins v. H.H. Brown Shoe Company*
No. 08-6885, 2009 U.S. Dist. LEXIS 61910 (S.D.N.Y. June 30, 2009)…………………………4

*Roe v. Gray*
165 F. Supp. 2d 1164 (D. Colo. 2001)……………………………………………...…11

*Roland v. Margi Systems, Inc.*
No. 00-341E, 2001 U.S. Dist. LEXIS 2444 (W.D.N.Y. Mar. 6, 2001)…………………………..8

*Semmes Motors, Inc. v. Ford Motor Company*
429 F.2d 1197 (2d Cir. 1970)……………………………………………………………12

*Sepanski v. Janiking, Inc.*
822 F. Supp. 2d 309 (W.D.N.Y. 2011)……………………………………………………8

*Shanferoke Coal & Supply Corporation v. Westchester Service Corporation*
70 F.2d 297 (2d Cir. N.Y. 1934)…………………………………………………………10

*Wyndham Associates v. Bintliff*
398 F.2d 614 (2d Cir. 1968)…………………………………………….…………6-7

*Zosky v. Boyer*
856 F. 2d 554 (3d Cir. 1988)…………………………………..…………………10

<u>**S**TATUTES & **R**EGULATIONS</u>                                                    <u>**P**AGE</u>

9 U.S.C. § 1 *et seq* ………………………………………………………………10

28 U.S.C. §§ 2201-02…………………………………………………………..3

29 U.S.C. §§ 206, *et seq*...……………………………………………………...3

42 U.S.C. §§ 2000e, *et. seq*……………………………………………………3, 8

42 U.S.C. § 2000e-5(f)(3)……………………………………………………8

iv

## I.    INTRODUCTION

Granting the motion for a stay brought by Defendant Greenberg Traurig, LLP ("GT" or "Defendant") would prejudice Plaintiff Francine Friedman Griesing ("Ms. Griesing" or "Plaintiff") and the class members and could result in inconsistent decisions on the same issue in district courts across the country.  In fact, granting stay would be contrary to virtually every equitable consideration this Court must weigh and would turn long-standing principles of civil procedure on its head.

Notably, GT does not identify any standard this Court should consider when evaluating the Motion to Stay.  Instead, GT argues that this Court should allow Defendant's end run around Plaintiff's choice of forum because (1) it can "only" get the relief it seeks under Section 4 of the Federal Arbitration Act ("FAA"), and (2) it can "only" obtain the relief it seeks in the Eastern District of Pennsylvania.  GT's argument is wrong on both fronts.

There are a range of ways GT can *properly* obtain the relief it seeks.  For example, this Court might rule against the Plaintiff on the declaratory judgment count or might stay the action pending arbitration pursuant to FAA Section 3.  Either option would force Plaintiff into arbitration.  Both of these alternatives are properly heard in this Court, and neither prejudices GT.

Moreover, GT's obsession with and construction of FAA Section 4 are misplaced and inaccurate.  Because Ms. Griesing's individual and class discrimination claims were *already pending* in this district, FAA Section 3 – rather than Section 4 – is the proper statutory mechanism for relief.  Even if using FAA Section 4 was appropriate at this procedural stage, this Court could act under FAA Section 4.

1

Ultimately, whether GT could properly seek to compel arbitration under FAA Section 4 in the Eastern District of Pennsylvania is beside the point. The question before this Court on the present motion is whether GT can make the necessary showing to justify staying this litigation. It cannot. There are great disadvantages in that approach for both the plaintiff class and the judicial system as a whole. No such disadvantages exist for Defendant in proceeding in this jurisdiction. Moreover, Ms. Griesing was the clear first to file in the dispute, and construing the situation otherwise subverts well-established principles for how civil litigation should proceed. The stay is wholly inappropriate and should be denied.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Ms. Griesing was a partner at GT, an international law firm managed from New York City, from April 2007 until January 2010. *See* Dkt. 9, Amended Complaint ("Am. Compl.") ¶¶ 9, 17. Although she was an exceptional performer, GT discriminatorily relegated her to the lowest partner level and denied her compensation, promotions, support and rewards enjoyed by less productive and less competent male partners.

Ms. Griesing filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") in September 2007. In June 2012, after more than three years of investigating and interviewing witnesses, the EEOC found "reasonable cause" to believe (a) that GT treats women partners less favorably than men in the terms and conditions of their employment, and (b) that GT retaliated against Ms. Griesing by terminating her in 2010 for complaining of discrimination. *Id.* ¶¶ 1, 92, 106.

Based on the EEOC's findings and Ms. Griesing's knowledge of GT's systematic gender discrimination nationwide, Ms. Griesing filed this class, collective and individual action on December 3, 2012, alleging violations of Title VII of the Civil Rights Act of 1964, as amended

2

by the Civil Rights Act of 1991 and the Lilly Ledbetter Fair Pay Act of 2009 ("Title VII"), 42 U.S.C. §§ 2000e, *et. seq.*, and the Equal Pay Act ("EPA"), 29 U.S.C. §§ 206, *et seq.*  Dkt. 1.  Ms. Griesing alleges that GT discriminated against female partners in assignments, compensation and other terms and conditions of employment, and retaliated against her for asking the firm to end its discrimination.  *See* Am. Compl. ¶¶ 24-107.

Ms. Griesing filed suit in this district because this is where GT's Chief Executive Officer Richard Rosenbaum works, and it is where he issued Plaintiff's employment offer letter, conducted her annual reviews and, in person, terminated her employment.  *See id.* ¶¶ 20-21. This is also the district in which CEO Rosenbaum makes all promotion and compensation decisions for each and every GT partner nationwide.  *Id.* ¶10.

With full knowledge that Ms. Griesing was pursuing her claims in the Southern District of New York and ***after*** the present action was filed, GT filed a Petition to Compel Arbitration under FAA § 4 in the Eastern District of Pennsylvania.  *See Greenberg Traurig, P.A. v. Griesing*, No. 12-cv-6718, Dkt. 1 (E.D.Pa. Dec. 3, 2012).  Ms. Griesing moved to dismiss GT's Petition or transfer it to this district.  *See Greenberg Traurig, P.A. v. Griesing*, No. 12-cv-6718, Dkt. 9 (E.D.Pa. Dec. 12, 2012).  Ms. Griesing's motion is pending, and the Court has not yet scheduled oral arguments or otherwise indicated a timeline for its consideration of the matter.  The Parties have not briefed for the Pennsylvania court the substantive issue of whether Ms. Griesing's claims are subject to arbitration.

On January 15, 2013, Ms. Griesing filed an Amended Complaint in this Court.  To facilitate this Court's resolution of the entire controversy, Ms. Griesing added a claim for a declaratory judgment under 28 U.S.C. §§ 2201-02 that she need not arbitrate her individual or class claims.  Am. Compl. ¶¶ 224-28.  As Plaintiff's counsel noted during the pre-motion

conference on February 1, 2013, Plaintiff anticipates amending the complaint shortly to include additional female partners as Named Plaintiffs and Class Representatives.

## III.    ARGUMENT

### A.  DEFENDANT CAN NOT MEET THE HEAVY BURDEN NECESSARY FOR A STAY.

This Court has the inherent power to stay this proceeding, as that power is "incidental to the power inherent in every court to control the disposition of the causes on its docket." *See Robbins v. H.H. Brown Shoe Co.*, No. 08-6885, 2009 U.S. Dist. LEXIS 61910, at *2 (S.D.N.Y. June 30, 2009) (Pauley, J.) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)).  As this Court has noted, "the party seeking a stay bears a ***heavy burden of showing necessity*** by demonstrating that . . . there will be no undue hardship imposed on the opposing party." *Hard Rock Cafe Int'l, (USA), Inc. v. Hard Rock Hotel Holdings, LLC*, 808 F. Supp. 2d 552, 564 (S.D.N.Y. 2001) (Pauley, J.) (internal quotation omitted) (emphasis added).  Granting a stay is not something done lightly; the determination of whether to stay an action requires consideration of multiple factors[1] – all of which weigh ***against*** a stay in this matter.

First, this Court routinely considers "the unfair prejudice to the party opposing the stay." *In re Platinum & Palladium Commodities Litig.*, No. 10-3617, 2010 U.S. Dist. LEXIS 145183, at *2 (S.D.N.Y. Nov. 30, 2010) (Pauley, J.) (considering a stay pending a motion to dismiss).  Second, this Court also considers whether the stay will "promote judicial efficiency." *Hard Rock Cafe Int'l, (USA), Inc.*, 808 F. Supp. 2d at 564; *see also Robbins*, 2009 U.S. Dist. LEXIS 61910, at *2 (a stay should be evaluated for "the economy of time and effort for [the court], for counsel,

---

[1] In its motion, GT cites no law on what standard this Court should apply or what factors it should consider in determining whether to grant GT's request for a stay.  As such, GT's Motion to Stay is insufficient on its face.  *See* Local Civ. R. 7.1(a)(1) (requiring that motions "shall specify the applicable rules or statutes pursuant to which the motion is brought").

and for litigants"); *Corcoran Law Group, L.L.C. v. Posner*, No. 09-1861, 2009 U.S. Dist. LEXIS 52587, at *2-3 (S.D.N.Y. June 5, 2009) (Pauley, J.) (noting that a stay should further "the efficient management of cases").

Third, this Court should consider "the public interest."  *Id.* at *2-3; *see also In re All Funds in Accounts in the Names Registry Publishing, Inc., et al.,* 58 F.3d 855, 856 (2d Cir. 1995) (considering "any public interests that might be affected" in determining whether to grant a stay). Fourth, in considering whether to grant a stay, the Court considers "the private interests of and burden on the defendant" caused by denying a stay.  *Corcoran Law Group,* at *2; *see also In re All Funds*, 58 F.3d at 856 (considering "whether, absent a stay, the moving party may suffer *irreparable harm*") (emphasis added).

### 1.    Staying this action would unfairly prejudice Ms. Griesing and the absent class members.

Should this Court grant Defendant's motion to stay and hand the decision of arbitrability to the jurisdiction where Ms. Griesing worked, it would be ratifying GT's argument that each and every female partner in the class should be required to have her arbitrability questions decided in separate districts across the country.  The interests of Ms. Griesing and the class would be prejudiced in numerous ways by such a multi-jurisdiction approach to determining the arbitration issue.  Not only would Ms. Griesing be denied her statutory right to her choice of forum,[2] but she and others would also have to shoulder the cost and burden of litigating in multiple forums, the uncertainty of inconsistent adjudications (discussed further below) and the inherent delays (which in turn can lead to the loss of evidence) that would come with this approach.

---

[2] This right is discussed in detail in Docket 16, Plaintiff Francine Friedman Griesing's Memorandum of Law in Support of the Motion to Bifurcate Declaratory Judgment Claim for Expedited Decision (hereinafter "Bifurcation Memo") on pages 5-6.

Moreover, passing the question of the arbitrability of the female partners' class gender discrimination claims to the Eastern District of Pennsylvania ignores clear and controlling precedent in this Circuit that dictates those claims are not arbitrable.   As discussed further in pages 5-6 of Plaintiff's Bifurcation Memo, courts within this Circuit have held that plaintiffs have a substantive right to pursue their discrimination claims on a class basis.  *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 785 F. Supp. 2d 394, 409-10 (S.D.N.Y. 2011) ("Only by proceeding on a class basis can the totality of her substantive claims against the defendants be adjudicated."); *see also Chen-Oster v. Goldman, Sachs & Co.*, No. 10 Civ. 6950, 2011 U.S. Dist. LEXIS 73200, at *10 (S.D.N.Y July 7, 2011) ("[W]hat is at issue is not a right to proceed procedurally, as a class, but rather the right, guaranteed by Title VII, to be free from discriminatory employment practices.").   The Second Circuit recently held that arbitration provisions are unenforceable where plaintiffs' "opportunity to vindicate their statutory rights" is at issue.  *In re Am. Express Merchs. Litig.*, 667 F.3d 204, 219 (2d Cir. 2012) (*cert. granted* 133 S. Ct. 594 (2012)) (citing with approval *Chen-Oster*, 785 F. Supp. 2d at 409-10 and *Chen-Oster*, 2011 U.S. Dist. LEXIS 73200, at *10).

## 2. Staying this action would decrease judicial efficiency and lead to inconsistent outcomes.

Adjudication in this Court is appropriate and ***necessary*** to avoid piecemeal litigation and the risk of inconsistent decisions from districts across the country.  *See*, *e.g.*,  *In re Charter Oak Assocs.*, 361 F.3d 760, 767 (2d Cir. 2004) (explaining the "judicial ***need*** to avoid inconsistency, anomaly, and unfairness" (emphasis added)); *Duferco Int'l Steel Trading v. T. Kaveness Shipping A/S*, 333 F.3d 383, 386 (2d Cir. 2003) (explaining the need "to avoid duplicative litigation and  the attendant possibility of inconsistent results"); *Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968) ("There is a strong policy favoring the litigation of related claims in

the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicative litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided.").

Defendant's proposed approach would unnecessarily tie up already strained judicial resources, and would make possible—if not likely—inconsistent determinations. *See* Plaintiff's Bifurcation Memo at 7. This Court has the opportunity to decide the question of arbitrability for *all* class members, avoiding the risk that numerous districts across the country would reach conflicting determinations that may, in turn, deprive female partners of the opportunity to vindicate their statutory rights in a class action contrary to Second Circuit precedent. Where, as here, the question is whether a female GT partner can bring Title VII claims against GT in the Southern District of New York, there is no more appropriate jurisdiction to consider that issue than the Southern District of New York.

Moreover, simply because the matter is stayed here does not guarantee that the Eastern District of Pennsylvania will decide the matter – or will decide it promptly. Currently, the only matter ripe for consideration in the Eastern District of Pennsylvania is Ms. Griesing's "Motion to Dismiss or, Alternatively, for a Change of Venue Pursuant to 28 USC §1404(a)." *See Greenberg Traurig, P.A. v. Griesing*, No. 12-cv-6718 (E.D.Pa. Dec. 3, 2012), Dkt. 9. In that briefing, Ms. Griesing argues that the arbitrability questions *must* be heard here based, in part, on the Federal Arbitration Act itself. If this Court were to stay pending the Eastern District of Pennsylvania's ruling, and then the Eastern District of Pennsylvania were to rule for Ms. Griesing that this Court should decide the arbitration question, untold months of delay would be added unnecessarily to the prosecution of this matter.

3.      **Staying this action is contrary to the public interest.**

The public has an interest in enforcement of civil rights laws, and Congress enacted a broad venue provision for Title VII of the Civil Rights Act of 1964 to further this interest.  42 U.S.C. § 2000e-5(f)(3).  A plaintiff's choice of forum is given "great weight."  *See Bank of Credit & Commerce Int'l Overseas Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001); *see also Roland v. Margi Sys., Inc.*, No. 00-341E, 2001 U.S. Dist. LEXIS 2444, at *12 (W.D.N.Y. Mar. 6, 2001) ("It is well-settled that a plaintiff's choice of forum should not be disturbed absent a strong showing that the balance of convenience favors the alternative forum." (citing *R. Maganial & Co. v. M.G. Chem. Co.*, 942 F.2d 164, 167 (2d Cir. 1991)).  Staying this matter would frustrate this public interest as it would prevent Ms. Griesing from pursuing her discrimination claims in the forum of her choice.

The public also has an interest in aggrieved parties easily enforcing civil rights laws and in having civil rights laws heard where the discrimination occurred.  *See Sepanski v. Janiking, Inc.*, 822 F. Supp. 2d 309, 316 (W.D.N.Y. 2011) ("[I]t is in the interest of the local community to participate in the enforcement of its civil rights laws.").   Moreover, the public has an interest in the open and timely resolution of civil rights claims.  *Ford Motor Co. v. EEOC*, 458 U.S. 219, 221 (1982) (superseded on other grounds by 42 U.S.C. § 2000e-2(a) ("Court delays, of course, affect all litigants.  But for the victim of job discrimination, delay is especially unfortunate.  The claimant cannot afford to stand aside while the wheels of justice grind slowly toward the ultimate resolution of the lawsuit.").  Ms. Griesing had to wait numerous years for the EEOC to investigate fully her claims before she could file the present lawsuit.  To ask her to wait more, particularly in light of the EEOC's for-cause finding, would be particularly unfair.

A determination by this Court to stay the litigation would be contrary to the deep-vested public interest in the fair and proper prosecution of civil rights claims.  Here, where Ms. Griesing acts in the capacity of a private attorney general, the public interest is decidedly with the Plaintiff.  *Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) (a plaintiff in civil rights case serves as "a private attorney general, vindicating a policy that Congress considered of the highest priority").

**4.    Denying a stay will not cause irreparable harm to the Defendant.**

GT ultimately seeks to move the gender discrimination claims out of federal court and into arbitration.  Inarguably, GT can obtain that relief (should it prove the underlying merits of its claim to arbitration) in this Court.  This Court could grant that relief to GT through its ruling on Plaintiff's declaratory judgment count or by granting a motion to stay pursuant to FAA Section 3.  Thus, there is no harm, irreparable or otherwise, to denying the stay.

a.  GT can obtain relief from this Court in the resolution of Plaintiff's Declaratory Judgment count.

As briefed fully in Plaintiff's Bifurcation Memo, Ms. Griesing recognizes that the arbitrability of this dispute is a threshold issue and that this Court has the authority to determine it.  For GT to argue that this Court cannot grant the relief it seeks would be absurd.  In fact, Ms. Griesing has already raised the arbitration dispute by filing a declaratory judgment claim on this issue.  *See* Am. Compl. ¶¶ 224-28.  Ms. Griesing is not contesting this Court's jurisdiction; instead, she seeks an expedited schedule for the resolution of this threshold issue – a request that accrues to the benefit of GT by ensuring a speedy resolution of its affirmative defense.

b.  GT can obtain relief from this Court pursuant to FAA Section 3.

Even if Ms. Griesing had not affirmatively raised this issue through her declaratory judgment count, Section 3 of the Federal Arbitration Act also enables this Court to grant the relief GT seeks.  Specifically, Section 3 allows a defendant in an ***ongoing*** proceeding to move to

stay the proceeding pending arbitration; in contrast, FAA Section 4 provides an independent vehicle for suit *where no case is yet pending*.  9 U.S.C. §§ 3-4.  This Court has the power to so act even where the arbitration may ultimately take place in another jurisdiction.  *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.*, 70 F.2d 297, 298 (2d Cir. 1934) ("Section 3 authorizes a stay even though the arbitration must take place beyond the jurisdiction of the court.").

GT's primary error in arguing that this Court has no power to provide it relief under the FAA is that it ignores the necessary consequence of a Section 3 stay.  As the Supreme Court explained in *Anaconda v. American Sugar Refining Co.*, the "power to grant a stay is enough without the power to order that the arbitration proceed" because "if a stay be granted, the plaintiff can never get relief unless he proceeds to arbitration." 322 U.S. 42, 45 (1944); *see also Zosky v. Boyer*, 856 F. 2d 554, 556 (3d Cir. 1988) ("[I]t makes no practical difference whether the court enters an order in an ongoing suit compelling arbitration or merely stays its own proceedings.  In either event, arbitration is the sine qua non before proceeding."); *Metropol. World Tanker Corp. v. P.N. Pertambangan Minjakdan Gas Bumi Nasional*, 427 F. Supp. 2, 4 (S.D.N.Y. 1975) (FAA Section 3 is "clearly a remedy intended for a defendant who wants to compel plaintiff to arbitration").

GT is playing linguistic games with its fastidious and technical use of the phrase "compel arbitration" and its single-minded focus on FAA Section 4.  If this Court determines the individual and class claims are subject to arbitration and stays the action under FAA Section 3, Ms. Griesing would be forced to arbitrate.

c.   GT could obtain relief from this Court pursuant to FAA Section 4.

GT is also wrong when it unequivocally states that the law precludes this Court from compelling arbitration to take place in Pennsylvania under FAA Section 4.  While Defendant relies on a district court case in Colorado for the proposition that this Court cannot compel arbitration, courts within the Southern District of New York have declined to adopt this position. *See, e.g.*, *Raytheon Co. v. Nat'l Union Fire Ins. Co.*, 306 F. Supp. 2d 346, 355 n.50 (S.D.N.Y. 2004) (declining to adopt the District of Colorado's decision in *Roe v. Gray*, 165 F. Supp. 2d 1164, 1173 (D. Colo. 2001)).  Contrary to GT's assertion, there is no Second Circuit precedent precluding this Court from compelling arbitration in a case such as this.  *See, e.g.*, *J.P. Morgan Sec. v. La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 70, 82 (S.D.N.Y. 2010) (noting that the Second Circuit has not decided this issue); *Raytheon*, 306 F. Supp. 2d at 355 (S.D.N.Y. 2004) ("There is no governing law on this point in this Circuit."); *Indian Harbor Ins. Co. v. Global Transp. Sys.*, 197 F. Supp. 2d 1, 2 (S.D.N.Y. 2002) (same).

Moreover, because Ms. Griesing had already filed her complaint in this Court and invoked its jurisdiction accordingly, the equitable considerations that might otherwise weigh against this Court compelling arbitration in another jurisdiction are not present.  *See*, *e.g.*, *Manta Ray Offshore Gathering Co., L.L.C. v. Shell Offshore, Inc.*, No. 04-2553, 2006 U.S. Dist. LEXIS 54941, at *8-9 (E.D. La. Aug. 7, 2006) ("Where the party seeking to avoid, rather than compel, arbitration has invoked the Court's jurisdiction, the Court is justified in compelling that party to arbitrate in another jurisdiction."); *In re Frigitemp Corp.*, 8 B.R. 284, 290 (S.D.N.Y. 1981) ("While there may be considerable unfairness in allowing the party who seeks to compel arbitration in one jurisdiction to require the adverse party to defend against the petition in

another jurisdiction," where the party seeking to avoid arbitration has already filed suit in another district, "the matters are reversed.").

### B. PLAINTIFF WAS UNAMBIGUOUSLY THE FIRST TO FILE, SO THIS COURT SHOULD ADJUDICATE THE ENTIRE CASE.

Despite the fact that Ms. Griesing clearly filed the present litigation before GT filed its Petition to Compel Arbitration, GT attempts to rework somehow the first-to-file precedent to its own advantage.  To that end, GT reimagines the first-to-file precedent as being an *issue-specific* investigation rather than a *case-specific* one.  Thus, GT argues that it should be credited all "first-to-file" protections because it was the "first" to raise its arbitration defense.

Using this logic, any defendant could ignore long-standing procedures for filing an Answer, Affirmative Defenses, or Counterclaims pursuant to Fed. R. Civ. Pro. 12(a)(1)(A), Fed. R. Civ. Pro. 8(c) and Fed. R. Civ. Pro. 13(a)-(b).  Instead, a defendant could initiate a new action in a separate jurisdiction of its own choosing for litigation of its affirmative defenses or counterclaims.  Rather than dealing with the originating litigation, a defendant could claim that it was the "first" to raise these defenses or counterclaims and that it should have its choice of an alternative forum honored.  To credit this reimagining of the federal judicial system would turn existing civil procedure on its head.

Indeed, Defendant cites no authority whatsoever to support this reimagining.  To the contrary, Defendant relies on cases that confirm this Court should decide the arbitration defense because this action was filed before the action in the Eastern District of Pennsylvania.  As the Second Circuit explained in *Semmes Motors, Inc. v. Ford Motor Co.*, "the instances where the second court should go forward despite the protests of a party to the first action where full justice can be done *should be rare indeed*."  429 F.2d 1197, 1207 (2d Cir. 1970) (emphasis added); s*ee also AEP Energy Servs. Gas Holding Co. v. Bank of Am. N.A.*, 626 F.3d 699, 722 (2d Cir. 2010)

(reversing a decision in which a later-filed court decided claims before the first-filed court); *Adams v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991) (the first-filed action should have moved forward because the second-filed action asserted a claim that should have been raised in the first-filed action); *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79-80 (2d Cir. 1989) (holding district court did not abuse discretion in allowing controversy to be adjudicated where it was first filed and there were no "special circumstances" warranting a departure from the first-filed rule).

While Defendant relies on *Citicorp Leasing, Inc. v. United Am. Funding, Inc.*, the case only serves to support Plaintiff's argument.  No. 03-1586, 2004 U.S. Dist. LEXIS 739 (S.D.N.Y. Jan. 21, 2004) (Pauley, J.).  In *Citicorp Leasing, Inc.*, this Court held that "[t]he party moving to deviate from the first-filed rule has the burden of demonstrating that circumstances justifying an exception exist."  *Id.* at *16-17.  Even though the defendant filed a competing action in another jurisdiction only days after the plaintiff filed, the Court held that the defendant must assert "special circumstances" warranting deviation from the first-filed rule or that plaintiff "engaged in deception, fraud, or any improper anticipatory tactics in filing suit in New York."  *Id.* at *17. The defendant failed to do so, and the plaintiff's choice of forum thus carried "significant weight."  *Id.*  Likewise, because GT has not articulated any special circumstances that warrant deviating from the first-filed rule, Ms. Griesing's choice of forum should be accorded "significant weight."

Defendant also relies on *Alpert v. Alphagraphics Franchising, Inc.* for the argument that Ms. Griesing is somehow the party who is forum shopping despite having been the first to file. 731 F. Supp. 685 (D.N.J. 1990).  However, the situation in *Alpert* is not analogous to the one here.  The plaintiff in *Alpert* was attempting to argue that the arbitration ***itself*** should take place

13

in a forum of the plaintiff's choosing rather than where the arbitration agreement dictated.  *Id.* at 689 (refusing to order that the arbitration take place in New Jersey when the arbitration agreement called for it to be arbitrated in Arizona).  In contrast, Ms. Griesing agrees that if she must arbitrate, that arbitration would take place in Pennsylvania; what she does not agree to is GT's forum-shopping to avoid this Court's resolution of GT's arbitration defense.  Accordingly, the present dispute is whether this Court can and should decide whether she must arbitrate at all. If Ms. Griesing were arguing that this Court should compel the Parties to arbitrate in New York, then the *Alpert* citation would be pertinent.  As she is not, it is not.

Perhaps recognizing that the first-filed rule supports Plaintiff's assertion that this Court should decide arbitrability, GT closes its brief by arguing in the alternative that the issues in Ms. Griesing's discrimination case do not involve the same issues as GT's Petition to Compel Arbitration.  If this Court were unable to provide the relief GT seeks, GT's argument may have more weight, and the cases GT cites in support of this argument all rely heavily on the courts in question being unable to provide the relief sought.  *See*, *e.g.*, *Cap Gemini v. Arentowicz*, No. 04 Civ. 0299, 2004 U.S. Dis. LEXIS 11337, at *7 (noting that the court could not provide the relief requested).  However, as discussed above, there are a multitude of ways GT might obtain the relief it seeks.  More important, GT's claim to arbitration is clearly an affirmative defense to Ms. Griesing's claims here.  *See* Fed. R. Civ. P. 8(c)(1) (noting "arbitration and award" is an affirmative defense that must be affirmatively stated in a responsive pleading).  As such, it is the same controversy for purposes of the first-to-file analysis.

## IV.     CONCLUSION

Defendant has not and will not be able to articulate (i) any relief it seeks in the Eastern District of Pennsylvania that it is unable to obtain from this Court or (ii) any prejudice that it would suffer from this Court deciding the question of arbitrability.  In contrast, staying this action would unfairly prejudice Ms. Griesing and the absent class members; would decrease judicial efficiency and could lead to inconsistency, anomaly and unfairness; would be contrary to the important public interest considerations at issue; and would upend the principles of protecting the party who is first to file.  As such, no factors support the imposition of a stay.

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Stay.

Dated: February 13, 2013                          Respectfully submitted,

By: /s/      David Sanford
**David W. Sanford (DC Bar No. 457933)**
**Katherine M. Kimpel (DC Bar No. 493028)**
**Kate Mueting (DC Bar No. 988177)**
**SANFORD HEISLER, LLP**
1666 Connecticut Ave, N.W.
Suite 300
Washington, D.C. 20009
Telephone: (202) 499-5200
Facsimile: (202) 742-7776

**Jeremy Heisler (JH-0145)**
**SANFORD HEISLER, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 723-2947
Facsimile:  (646) 723-2948
jheisler@sanfordheisler.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Memorandum of Law in Opposition to Defendant's Motion to Stay has been filed electronically and is now available for viewing and downloading from the Court's Electronic Case Filing System and that paper copies will be sent by regular mail to the following:

Scott Bennett Freemann
Freemann Law Offices, P.C.
One Logan Square, Suite 2675
18th & Cherry Streets
Philadelphia, PA 19103

William H. Jeffress, Jr., Esquire
Baker Botts LLP
1299 Pennsylvania Avenue, N.W.
The Warner
Washington, DC 20004-2400

Bettina B. Plevan, Esq.
Proskauer LLP
11 Times Square
New York, NY 10036-8299

***Counsel for Greenberg Traurig, LLP***

*/s/ Harrison Stark*